IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONICA RAVEN | : | CIVIL ACTION |
| v. | : | |
| CITY OF PHILADELPHIA, et al. | : | NO. 15-4146 |

**MEMORANDUM**

**Padova, J.** **January 26, 2016**

Plaintiff Monica Raven brought this action against the City of Philadelphia, Francis Bielli, and Gwendolyn Bell alleging claims under 42 U.S.C. § 1983, as well as claims for breach of contract and conversion under Pennsylvania law. Defendants have moved to dismiss the Complaint as barred by the statute of limitations, as well as for lack of standing pursuant to a collective bargaining agreement and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, we dismiss Counts I-III for failure to state a claim upon which relief may be granted, dismiss Count V as against Bell and Bielli in their official capacities, and deny the Motion as to the remaining claims.

## I. BACKGROUND

The Complaint alleges the following facts. Monica Raven is an African-American woman who was hired as a police officer for the Philadelphia Police Department in June 1998. (Compl. ¶¶ 5, 11.) While on duty on December 30, 2003, Raven injured her foot by stepping on a nail. (Id. ¶ 14.) The nail went through her work boot and into her foot. (Id.) As a result of this injury, Raven developed Reflex Sympathetic Dystrophy Syndrome, a degenerative nerve disorder. (Id.) Raven is now unable to walk or stand. (Id.) Although there is no cure for

Raven's disorder, she did undergo numerous surgeries, including one to implant a spinal cord stimulator that delivers electric impulses to the affected nerves.  (Id. ¶¶ 15-16.)

In May 2006, Raven was seen by the Medical Director for the City of Philadelphia, who determined that she was "disabled from the further performance of the duties of . . . her position and that such disability is likely to be [p]ermanent."  (Id. ¶ 17, Ex. A.)  Soon after being declared permanently disabled, Raven was notified by an Administrator from Law Enforcement Health Benefits, Inc. that she had been granted a Service Connected Disability and was informed that "[t]he City of Philadelphia is responsible for all medical services related to [her] 'on the job injury' for the rest of [her] life."  (Id. ¶ 18, Ex. B.)

Raven officially retired from her position as a City of Philadelphia Police Officer on November 18, 2006, one day after her pay status as a police officer was terminated.  (Id. ¶ 20.)  She subsequently applied for a service connected disability pension.  (Id. ¶ 21.)  She was awarded a service connected disability pension, which she was told would be retroactive to her retirement date.  (Id.)  On August 29, 2007, she completed forms indicating how she wished to be taxed for her pension benefits.  (Id. ¶ 22.)

Despite being approved for a service connected disability pension, Raven has never received a payment from her pension.  (Id. ¶ 24.)  She has contacted the City of Philadelphia and the Board of Pensions and Retirement to inquire about her benefits, but her inquiries were unsuccessful.  (Id. ¶ 25.)  Eventually Raven sought legal help and retained counsel on February 24, 2015.  (Id. ¶ 26.)  Counsel then attempted to discover the status of Raven's benefits but was unsuccessful.  (Id. ¶¶ 26-27.)

As a result, Raven filed this Complaint against the City of Philadelphia, as well as two individuals in their official and individual capacities – Francis Bielli, the Executive Director of

the City of Philadelphia Board of Pensions and Retirement, and Gwendolyn Bell, the former Executive Director of the Board. Count I asserts a claim against all Defendants for violation of Raven's Fourteenth Amendment procedural due process rights pursuant to 42 U.S.C. § 1983.[1] Count II asserts a claim against all Defendants for violation of Raven's Fourteenth Amendment rights to equal protection pursuant to § 1983. Count III asserts a § 1983 claim against the City of Philadelphia under Monell v. Department of Social Services, 436 U.S. 658 (1978). Count IV asserts a claim against all Defendants for breach of contract under Pennsylvania state law. Count V asserts a conversion claim against Defendants Bielli and Bell under Pennsylvania state law. Count VI asserts a claim against all Defendants for punitive damages.[2]

## II. LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)). Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual

[1] The Complaint never specifies whether Raven is contending that there was a violation of her procedural or her substantive due process rights. However, Defendants' Motion to Dismiss references only procedural due process. In responding to the Motion, Raven similarly only addresses procedural due process. Therefore, we interpret the Complaint to allege only a violation of Raven's procedural due process rights.

[2] Since a request for punitive damages is not a separate cause of action, we consider this request only as part of Raven's request for relief.

allegation.'" Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III. DISCUSSION

### A. Statute of Limitations

Defendants move to dismiss Raven's federal and state law claims because Raven failed to bring her claims within the applicable statutes of limitations. Normally, a violation of a statute of limitations is not an appropriate basis for granting relief under a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Budzash v. Howell Twp., 451 F. App'x 106, 109 (3d Cir. 2011) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994)). However, "'an exception is made where the complaint facially shows

noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.'" Id. (quoting Oshiver, 38 F.3d at 1384 n.1). "Statute of limitations issues normally implicate factual questions regarding when the plaintiff discovered or should have discovered the elements of the cause of action; therefore a defendant bears a heavy burden in seeking to establish as a matter of law that the challenged claims are barred." Bionix Dev. Corp. v. Sklar Corp., Civ. A. No. 07-4465, 2009 WL 3353154, at *5 (E.D. Pa. Oct. 14, 2009) (citing Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481, 498 (3d Cir. 1985)). "'If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).'" Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978)).

Defendants contend that Raven's claims are time barred because the Complaint includes no factual allegations of events that occurred after August 29, 2007, nearly eight years prior to the filing of the Complaint. However, we are uncomfortable concluding, at this early stage and based only on the facts as alleged in the Complaint, that the claims asserted in the Complaint are definitively barred by the statute of limitations. Accordingly, we follow the general rule that alleged violations of statutes of limitations are generally not appropriate bases for granting a motion to dismiss given the inherent factual issues, and we therefore deny Defendants' Motion to Dismiss on statute of limitations grounds.[3]

[3] We note, however, that "[t]o prevent dismissal, all civil complaints must . . . set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler, 578 F.3d at 210. In addition, we note that this ruling does not preclude Defendants from later reasserting, on a motion for summary judgment or otherwise, that Raven's claims are barred by the statutes of limitations.

B. Standing

Defendants also contend that Raven lacks standing to pursue this case in court, as Raven is a party to a Collective Bargaining Agreement ("CBA") that limits her remedies to those available through the Grievance and Arbitration procedure established in that agreement. Specifically, Defendants argue that "Plaintiff has sought to challenge the contract, individually, between the Fraternal Order of Police and the City of Philadelphia in the Eastern District of Pennsylvania, and not through the grievance and arbitration process which is the exclusive remedy of the parties," so Raven's claims should be dismissed. (Defs.' Mem. at 7.) Because Raven did not address this argument in her Response, this ground for dismissal is unopposed.

It appears that Defendants are claiming only that the breach of contract claim is barred by the Collective Bargaining Agreement, based upon their statement that "Plaintiff has sought to challenge the contract." (Id. (emphasis added).) However, regardless of whether Defendants are challenging only the contract claim or the entire Complaint, we deny the Motion insofar as it argues that Raven lacks standing. As discussed above, on a motion to dismiss, we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer, 605 F.3d at 230 (citations omitted). Defendants appear to argue that we can consider the CBA because "Plaintiff alleges that the City breached the collective bargaining agreement by failing to compensate plaintiff for her alleged service connected disability." (Defs.' Mem. at 6.) However, the Complaint does not specifically mention a collective bargaining agreement. The Complaint instead mentions a contract between the Philadelphia Fraternal Order of Police and the City of Philadelphia. Raven also attaches a portion of that contract to the Complaint. If the portion of the CBA referenced in and attached to Defendants' Motion is from the contract

referred to in the Complaint, then we would be allowed to consider the CBA. However, the CBA and the contract referred to in the Complaint have different fonts, and the pagination suggests that they are not the same document because the CBA excerpt attached to Defendants' Motion as Exhibit D is Section XXI of the CBA and starts on page 42, whereas the contract excerpt attached to the Complaint begins with Section XIX and starts on page 64. More importantly, the CBA attached to Defendants' Motion appears to date after 2010, judging by the dates mentioned under the section entitled "Disciplinary Code" (Defs.' Ex. D at 42), while the Complaint's allegations strongly suggest that the agreement on which it relies was in effect before that time. (Compl. ¶ 21 (alleging that Raven's pension "was retroactive to her retirement date of November 18, 2006").)

The Third Circuit has previously approved considering CBAs on motions to dismiss when attached to a defendant's motion. See Dykes v. Se. Pa. Transp. Auth., 68 F.3d 1564, 1566 & n.3 (3d Cir. 1995). However, in Dykes, it was clear that the CBA could be considered, as the complaint relied on the document. Id. Here, such reliance is not evident, given that the CBA on which Defendants rely is not obviously the same on which the Complaint relies. This situation is more akin to Young v. Visiting Nurses Ass'n, Civ. A. No. 98-6290, 1999 WL 1045189 (E.D. Pa. Nov. 17, 1999), where the court did not consider the CBA because "Plaintiff . . . [made] no reference to the CBA in her complaint and none of her claims as pled [were] predicated on that agreement." Id. at *2.

Defendants do not provide any additional grounds supporting consideration of the CBA attached to their Motion. Given that it does not appear that the Complaint relies upon the specific CBA submitted by Defendants, we will not consider the document attached as Exhibit D

to the Motion, and we therefore deny Defendants' Motion insofar as it contends, based on Exhibit D, that Raven lacks standing.[4]

C. Failure to State a Claim

Counts I and II assert claims against all Defendants pursuant to 42 U.S.C. § 1983 for deprivation of Raven's Fourteenth Amendment procedural due process rights and denial of her Fourteenth Amendment right to equal protection under the law. Count III asserts a claim against the City of Philadelphia for the same deprivations pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978). Defendants move to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants argue that Counts I and II should be dismissed because the Complaint does not plead facts in support of each element of a procedural due process claim or an equal protection claim. Defendants similarly argue that Count III should be dismissed because the Complaint does not allege a policy of the City that caused the deprivation of Raven's Fourteenth Amendment rights.

Raven has brought her claims pursuant to 42 U.S.C. § 1983, which provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v.

[4] We are uncertain why Defendants Bielli and Bell are named in this Count, given that it appears that they are not parties to any contract or CBA between the City of Philadelphia and the Philadelphia Fraternal Order of Police. While Defendants have not moved to dismiss Bielli and Bell on this basis, we encourage Raven to consider this observation when filing her amended complaint.

Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (footnote and citation omitted). In order to state a claim for relief under § 1983, "a plaintiff must demonstrate the defendant, acting under color of law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id. Thus, to survive a motion to dismiss, the Complaint must allege facts sufficient to establish, if true, that Defendants' actions or omissions caused a deprivation of Raven's Fourteenth Amendment rights to procedural due process or equal protection under the law.

1. Count I

Count I alleges that Defendants violated Raven's due process rights under the Fourteenth Amendment, which states, in pertinent part, that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Under the [F]ourteenth [A]mendment, a state may not authorize the deprivation of a protected liberty or property interest without providing a procedure in connection with that deprivation that meets the requirements of due process." Sample v. Diecks, 885 F.2d 1099, 1114 (3d Cir. 1989) (citations omitted). A complaint alleging violations of procedural due process rights pursuant to § 1983 must allege that "(1) [the plaintiff] was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [the plaintiff] did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). "Thus, in order to state a claim for failure to provide sufficient procedural due process, a plaintiff must have taken advantage of the processes that are available to her, unless those processes are unavailable or patently inadequate." Solomon v. Philadelphia Hous. Auth., 143 F. App'x 447, 453 (3d Cir. 2005) (citing Alvin, 227 F.3d at 116).

Defendants maintain that "[P]laintiff has utterly failed to explain how the process she received was inadequate." (Defs.' Mem. at 8.) Specifically, Defendants seem to argue that Count I should be dismissed because the Complaint fails to allege how the process actually afforded by Defendants was inadequate.[5] Here, the Complaint asserts that Raven has a property right in her service connected disability pension. The Complaint further alleges that Defendants deprived Raven of her property rights without due process of law "by allowing Plaintiff to go for eight years without receiving a dime of her Service Connected Disability Pension, due to their failure to adequately monitor and administer Plaintiff's pension account, and investigate Plaintiff's legitimate complaints that she had not been paid." (Id. ¶ 41.) The Complaint, however, does not allege that Raven took advantage of any process to address the nonpayment of her pension, that no process was available, or that the available process was patently inadequate. Instead, the Complaint only alleges that Defendants failed to monitor, administer, or investigate and that this failure constitutes deprivation without due process. These allegations, however, do not properly allege a Fourteenth Amendment procedural due process claim pursuant to § 1983. Accordingly, the Complaint does not allege facts that, if true, would establish that Defendants

[5] In support of that argument, Defendants attached exhibits to their Motion that describe the process that Raven was provided. (Defs.' Exs. A, B, E.) Defendants, however, fail to explain how these exhibits can be considered in the context of a motion to dismiss. As stated above, on a motion to dismiss, we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer, 605 F.3d at 230 (citation omitted). In addition, we take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." DelRio-Mocci, 672 F.3d at 245 (citation omitted). Defendants have not provided any authority that would allow us to examine these exhibits when deciding whether to dismiss the Complaint. Therefore, we will not consider these documents.

deprived Raven of her pension without due process, and we therefore grant Defendant's Motion to Dismiss as to Count I of the Complaint.[6]

2. Count II

Count II alleges that Defendants violated Raven's rights to equal protection under the law as guaranteed by the Fourteenth Amendment, which provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In order for a plaintiff with a protected status to state a § 1983 claim based on an equal protection clause violation, a complaint must allege that the plaintiff "received different treatment [from] other similarly situated persons and that the disparate treatment was based on her protected class status." Kasper v. Cty. of Bucks, 514 F. App'x 210, 214 (3d Cir. 2013) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990)). Thus, to survive a motion to dismiss, the complaint must allege facts that would establish that the plaintiff is "(1) a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class." Green v. Chester Upland Sch. Dist., 89 F. Supp. 3d 682, 693 (E.D. Pa. 2015) (citations omitted).

Defendants argue that the Complaint does not allege any facts that would support a claim for § 1983 liability based on a violation of the equal protection clause. Specifically, Defendants argue that the Complaint does not identify any individuals who are similarly situated to Raven or that those individuals were treated differently from her. The Complaint alleges that Raven is an African-American woman, making her a member of a protected class. The Complaint also

[6] Count I also appears to assert direct liability against the City of Philadelphia for violating Raven's procedural due process rights. However, as explained below and as argued by Defendants, a municipality can only be sued under § 1983 pursuant to Monell. Therefore, to the extent that Raven is alleging a § 1983 due process claim directly against the City of Philadelphia in this Count, we dismiss that aspect of the Count for failure to comply with the dictates of Monell as well as for the other reasons stated above.

alleges that "[t]he City of Philadelphia Board of Pensions and Retirement has and/or had unconstitutional policies of failing to adequately monitor and administer pension accounts, as well as adequately investigate" pensioners' complaints, "not only with regard to Plaintiff but also with regard to other African-American police officers, who have been wrongfully denied service connected disability pensions." (Compl. ¶¶ 49-50.) The Complaint also alleges that the City's Board of Pension and Retirement's policies disparately treat and disparately impact African-American police officers. However, the Complaint does not allege any facts that, if true, would establish that Raven was similarly situated to members of an unprotected class or was treated differently from those individuals. Because the Complaint fails to plausibly allege all of the elements of a § 1983 claim for violation of Raven's Fourteenth Amendment right to equal protection, we grant Defendants' Motion to Dismiss as to Count II of the Complaint.[7]

3. Count III

Count III alleges that the City of Philadelphia is liable for violating Raven's Fourteenth Amendment rights to due process and equal protection pursuant to 42 U.S.C. § 1983. Defendants move to dismiss Count III against the City, arguing that the Complaint does not allege all the elements of a Monell claim.

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. Consequently, when a § 1983 claim is asserted against a municipality, a plaintiff must also demonstrate that her constitutional deprivations were caused by an official policy or custom of the municipality or a failure by the municipality to train

[7] Count II similarly appears to assert direct liability against the City of Philadelphia for a violation of Raven's right to equal protection. However, as already explained and as argued by Defendants, a municipality can only be sued under § 1983 pursuant to Monell. Therefore, to the extent that Raven is alleging a § 1983 equal protection claim directly against the City of Philadelphia in this Count, we dismiss that aspect of the Count for failure to comply with the dictates of Monell as well as for the other reasons stated above.

its employees. Id.; Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997); City of Canton v. Harris, 489 U.S. 378, 388 (1989).  A municipal policy is a "'statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers.'"  Simmons v. City of Philadelphia, 947 F.2d 1042, 1059 (3d Cir. 1991) (alteration in original) (quoting Monell, 436 U.S. at 690).  A custom, on the other hand, "is an act 'that has not been formally approved by an appropriate decision-maker,' but that is 'so widespread as to have the force of law.'"  Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Bryan Cty., 520 U.S. at 404).  Finally, the plaintiff must also establish that the municipal body employed the deficient policy or custom with "deliberate indifference" to the constitutional deprivations the policy or custom caused.  City of Canton, 489 U.S. at 389; Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996) (stating that, while the deliberate indifference standard originally applied to failure to train cases, it has been adopted "in other policy and custom contexts" (citations omitted)). Plaintiffs can prove such deliberate indifference by showing that decision-makers knew that similar constitutional deprivations had previously occurred and were aware of ways to prevent them, "'but either deliberately chose not to pursue these alternatives or acquiesced in a long-standing policy or custom of inaction in this regard.'"  Beck, 89 F.3d at 972 (quoting Simmons, 947 F.2d at 1064).

    The Complaint alleges that Defendants Bielli and Bell violated Raven's rights to due process and equal protection under the Fourteenth Amendment by "[f]ailing to take immediate and appropriate action to investigate or otherwise determine what occurred once informed that Plaintiff had not received payments from her Service Connected Disability Pension," and by "[f]ailing to take prompt and effective steps to protect Plaintiff and rectify the situation and see that Plaintiff received all the money due to her under her pension, including arrears."  (Compl. ¶

58.)  The Complaint also asserts that the City of Philadelphia is liable for these violations because:

> [t]he constitutional abuses and violations by . . . Defendant[s] . . . were and are directly and proximately caused by policies, practices, and/or customs developed, implemented, enforced, encouraged and sanctioned by Defendant City of Philadelphia, including the failure to adequately and properly monitor the administration of pension accounts and investigate the legitimate complaints of civil service pensioners.

(Id. ¶ 33.)  Finally, the Complaint contends that Defendants acted with deliberate indifference to the violation of Raven's rights.

The Complaint, however, does not include any allegations of fact describing the relevant policies or customs of the City of Philadelphia, how those policies or customs caused Raven's constitutional injury, or what other instances of misconduct put the City of Philadelphia policymakers on notice of previous constitutional violations.  Therefore, we conclude that the Complaint fails to plausibly allege that the claimed deprivations of Raven's rights under the Fourteenth Amendment were caused by an official policy or custom of the City of Philadelphia, that the City of Philadelphia acted with deliberate indifference to the constitutional deprivations caused by its customs or policies, or that the City of Philadelphia ignored specific knowledge of any particular threat.  See e.g., Sacko v. Univ. of Pa., Civ. A. No. 14-831, 2014 WL 2547802, at *4 (E.D. Pa. June 6, 2014) (granting a motion to dismiss where the complaint failed to allege facts establishing that the municipal defendant's employees caused the deprivation of the plaintiff's rights and also failed to plead facts establishing that defendant's policymakers were aware of past constitutional violations); Doneker v. Cty. of Bucks, Civ. A. No. 13-1534, 2013 WL 4511630, at *4 (E.D. Pa. Aug. 26, 2013) (dismissing Monell claim because the complaint failed to allege facts establishing that municipal defendants' failure to establish necessary

policies was deliberately indifferent). Therefore, we grant Defendants' Motion to Dismiss as to Count III.

D. Immunity

Count V asserts that Defendants Bielli and Bell are liable for the tort of conversion for "withholding of payments for Plaintiff's service connected disability pension . . . without lawful justification and without the consent of Plaintiff." (Compl. ¶ 70.) Defendants move to dismiss this claim on the basis of the immunity conferred by the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. §§ 8541 *et seq*. Raven argues in her Response that the conversion claim is only asserted against Bielli and Bell, not against the City of Philadelphia, so the Torts Claims Act does not apply. However, the Tort Claims Act applies not only to municipalities themselves, but also to municipal employees: "[m]unicipal employees . . . are generally immune from liability to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment." Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006) (per curiam) (citing 42 Pa. Cons. Stat. Ann. § 8545). Nonetheless, the Tort Claims Act does not confer immunity "[i]n any action against a local agency or employee thereof . . . in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct." 42 Pa. Cons. Stat. Ann. § 8550. For the purposes of the Tort Claims Act, willful misconduct "'has the same meaning as the term intentional tort.'" Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (internal quotation marks omitted) (quoting Delate v. Kolle, 667 A.2d 1218, 1221 (Pa. Commw. Ct. 1995); and citing Kuzel v. Krause, 658 A.2d 856, 859 (Pa. Commw. Ct. 1995)). Conversion is an intentional tort, and thus Bielli and Bell are not immune from this claim to the extent that they are sued in their individual capacities. Dix v. City of Philadelphia, Civ. A. No. 15-532, 2015 WL

4624248, at *4 (E.D. Pa. Aug. 3, 2015) (citing Roman v. Swartz, No. 1243-2012, 2013 WL 3982813, at *2 (Pa. Commw. Ct. 2013); and Brown, 269 F.3d at 214 (recognizing that employees are not immune from suits for conversion according to § 8550)). Therefore, we deny Defendants' Motion to the extent that it seeks dismissal of the claims against Bielli and Bell in their individual capacities.

Even though we conclude that Bielli and Bell are not immune from claims asserted against them in their individual capacities, we reach a different conclusion with respect to the claims against them in their official capacities. The Tort Claims Act provides that municipal agencies are immune from suit for the intentional acts committed by its employees. Lazarde v. City of Reading, Civ. A. No. 10-5139, 2012 WL 4473246, at *6 (E.D. Pa. Sept. 28, 2012) (citing Agresta v. City of Philadelphia, 694 F. Supp. 117, 123-24 (E.D. Pa. 1988)). "[A] claim against a local official brought against him in his official capacity is essentially a claim against the municipality itself." Rosembert v. Borough of E. Lansdowne, 14 F. Supp. 3d 631, 644 (E.D. Pa. 2014) (citation omitted). Therefore, we grant Defendants' Motion to Dismiss this Count as against Bielli and Bell in their official capacities.

## IV.   CONCLUSION

For the foregoing reasons, we grant in part and deny in part Defendants' Motion to Dismiss. Specifically, we grant the Motion to Dismiss as to Counts I and II because the Complaint fails to allege facts that, if true, establish the elements of Fourteenth Amendment due process and equal protection claims under § 1983. We also grant the Motion as to Count III, which alleges liability of the City of Philadelphia based on Monell, because the Complaint does not allege facts that, if true, establish the existence of a policy or custom that caused the deprivation of Raven's constitutional rights. In addition, we grant the Motion as to Count V as

against the individual Defendants in their official capacities, but deny the Motion as to these Defendants in their individual capacities. However, we deny Defendants' Motion as to Count IV because we reject Defendants' argument that Raven lacks standing to challenge the contract in this court. Finally, we deny Defendants' Motion as to Count VI, as it is only a request for punitive damages, not a claim against Defendants.

While we therefore dismiss several of Raven's claims, we also note that, in civil rights cases, "district courts must offer amendment – irrespective of whether it is requested – when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); see also Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to a 12(b)(6) dismissal, a District Court must permit a curative amendment unless an amendment would be inequitable or futile." (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002))). Here we are not convinced that Raven's claims are either inequitable or futile, and we therefore grant Raven leave to amend. An appropriate order follows.

BY THE COURT:

/s/John R. Padova

____________________

John R. Padova, J.